**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **DAVID THORPS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 10 C 5947** |
| | ) | |
| **v.** | ) | **Magistrate Judge Jeffrey Cole** |
| | ) | |
| **MICHAEL J. ASTRUE, Commissioner** | ) | |
| **of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

.

**MEMORANDUM OPINION AND ORDER**

The plaintiff, David Thorps, seeks review of the final decision of the Commissioner ("Commissioner") of the Social Security Administration denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title II of the Social Security Act ("Act"). 42 U.S.C. §§ 423(d)(2); 1314(a)(3)(A), 216(I) and 223(d)(2). Mr. Thorps asks the court to reverse and remand the Commissioner's decision, while the Commissioner seeks an order affirming the decision.

**I.
PROCEDURAL HISTORY**

Mr. Thorps applied for SSI and DIB on July 2, 2007, alleging that he had been disabled since May 11, 2007. (Administrative Record ("R.") 19). His claims were denied initially on August 16, 2007, and upon reconsideration on November 1, 2007. Mr. Thorps filed a timely request for rehearing on December 14, 2007. (R. 95). An administrative law judge ("ALJ") convened a hearing on August 14, 2009, at which Mr. Thorps, represented by counsel, appeared and testified. (R. 19). Leanne L. Kehr testified as an impartial vocational expert. On November 24, 2009, the ALJ issued

a decision finding that Mr. Thorps was not disabled because he did not have a severe impairment – an impairment that would significantly limit his ability to perform basic work activity – that satisfied the 12-month durational requirement prior to the ALJ's decision. (R. 27). This became the final decision of the Commissioner when the Appeals Council denied Mr. Thorps's request for review of the decision on August 10, 2010. (R. 1–3). *See* 20 C.F.R. §§ 404.955; 404.981. Mr. Thorps has appealed that decision to the federal district court under 42 U.S.C. § 405(g), and the parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c).

## II.
## THE EVIDENCE OF RECORD

### A.
### The Vocational Evidence

Mr. Thorps was born on May 2, 1955, making him fifty four years old at the time of the ALJ's decision. (R. 133). He has four years of college education. (R. 33). He last worked as a health care provider, a job that involved taking care of elderly people and performing various chores, such as washing, cleaning, and cooking. (R. 44). The job ended after only a few months, when Mr. Thorps elected to stop working after the onset of his alleged disability due to a left foot injury on May 11, 2007. (R. 44). Before that, he worked as shuttle driver and a dry cleaner. (R. 70-71). His longest held position was as a janitor and ticket agent with the Chicago Transit Authority. (R. 71, 73).

### B.
### The Medical Evidence

Emergency room records of South Shore Hospital, dated May 13, 2007, and Stroger Hospital, dated May 14, 2007, show the plaintiff sustained a left foot injury on May 12, 2007. (R. 232, 255). On examination, he had tenderness of tissue and bone as well as swelling. (R. 234, 255).

X-rays of the left foot showed fracture of the distal left 2nd metatarsal. (R. 236). The attending physician diagnosed fracture of the 2nd metatarsal. (R. 233). File evidence indicates the plaintiff had one follow-up visit at Woodlawn Health Care on June 19, 2007 for left foot fracture. Clinical notation references left foot with 3rd and 4th metatarsal fracture. (R. 244). The attending physician diagnosed left metatarsal fracture and told plaintiff to return in three weeks. (R. 245).

The plaintiff also had follow-up care at the Stroger Hospital on June 6, 2007. (R. 252). He had another follow-up visit on June 20, 2007, in which x-rays were ordered for follow-up 2nd left metatarsal neck fracture. X-rays of the left foot showed progression of healing. (R. 250). Clinical notes reference an ankle fracture, but the addenda indicate x-ray results for only 2nd left metatarsal fracture. (R. 253). On July 3, 2007, plaintiff complained of pain, but admitted that he was not taking medication as prescribed. Physical examination showed intact nerves and no open lesions or edema. (R. 251). Although not confirmed by x-ray, the plaintiff's doctor diagnosed fracture of 1st and 2nd metatarsals. (R. 251). Of particular significance, his doctor planned to remove the cast and to return plaintiff to work as of July 5, 2007, without restrictions. (R. 251).

On July 19, 2007, the plaintiff complained of minimal pain with ambulation in the cast. (R. 271). He said he had been taking Tylenol with codeine for pain. (R. 271). A physical examination was essentially normal, with no pain or numbness and bilaterally intact sensation. (R. 271). The doctor assessed status post fracture of left 1st and 2nd metatarsals. (R. 271). The doctor removed plaintiff's cast, and noted that plaintiff reported no pain with palpation or range of motion. (R. 271). He was given a CAM walker to be used with ambulation, and told to return in two weeks. (R. 271). Per treatment note dated August 2, 2007, the plaintiff reported some pain and swelling in the lateral aspect of his left foot. (R. 295). He had moderate edema on examination. (R. 295).

His doctor assessed left 2nd metatarsal head fracture healing, and told plaintiff to wrap his foot with an Ace bandage, continue with the CAM walker, ambulating with weight-bearing as tolerated, and to return in two weeks. (R. 295). On August 30, 2007, plaintiff returned for follow-up of status post 2nd metatarsal head. (R. 294). He complained of pain and swelling in the left foot. (R. 294). He admitted that he had stopped using the CAM walker on August 16, 2007, though it did help with the pain, and presented to the exam with a cane. (R. 294). Plaintiff stated he felt better after his doctor gave him an AirCast ankle brace. (R. 294). His doctor also told him to return in one month. (R. 294). Following this visit, the administrative record contains no evidence of follow up or further treatment.

The State agency expert consultant, Dr. Calixto Aquino, M.D., found on August 15, 2007, that the plaintiff's diagnosis of fractured distal left second metatarsal was not expected to last 12 months and was expected to be non-severe at the end of this period. (R. 274). Dr. Frank Norbury, M.D., State agency expert consultant, affirmed the August 2007 decision on October 30, 2007. (R. 276).

The plaintiff underwent an internal medicine consultative examination with Dr. Hilton Gordon, M.D. ("Dr. Gordon"), on August 4, 2009, shortly before the administrative hearing. At the examination, the plaintiff reported that he tripped and fractured the 2nd and 3rd toes on his left foot in 2007. (R. 278). He told the doctor that the toes had healed but that he still experiences pain and swelling on and off on the toes of the left foot. (R. 278). He also complained of pain and swelling in the right foot, speculating that it was due to his protecting the left foot. (R. 278). He reported that he could walk 3 to 4 blocks, go up two flights of stairs, and stand for 20 minutes without difficulty.

(R. 278). He uses a cane for support but can walk without it. (R. 278). The plaintiff presented to the examination with a non-prescribed cane. (R. 280).

The physical examination by Dr. Gordon revealed that plaintiff had slight tenderness in the proximal 2nd and 3rd toes of his left foot. (R. 279). His toes were able to curl at least 90% on the left foot compared to 100%. (R. 279). There was no redness, warmth, or swelling in the right foot. (R. 279). Plaintiff had intact strength and sensation. (R. 279). He had a slight limp, but could walk more than 5 feet without a cane. (R. 280). Dr. Gordon diagnosed status post fracture of 2nd and 3rd toes of the left foot, with possible arthritis and slight tenderness on palpation of the proximal 2nd and 3rd toes but no swelling. (R. 280). Dr. Gordon opined that plaintiff would have the following residual functional capacity: stand for 8 hours, but only 4-5 hours at a time; stand for 20-30 minutes at a time; walk for 3-4 hours but only 3 hours at a time; lift/carry 20 pounds frequently; and occasionally climb, balance, kneel, crouch or crawl. (R. 286-89). Dr. Gordon noted that this assessment was based on the plaintiff's complaints of pain and swelling feet. (R. 288-89).

## C.
### The Administrative Hearing Testimony

### 1.
### Mr. Thorps's Testimony

Mr. Thorps asserts that he has been disabled since May 11, 2007, due to a broken left foot. (R. 38). He reported that he cannot walk further than a mile, and uses a cane to walk. (R.50-51). The plaintiff testified he resides with and cares for his dementia-impaired mother, assisting her with her daily activities without being compensated. (R. 61). He shares this duty with his siblings. (R. 61). He testified that he was most recently a health care provider, washing and cleaning the elderly, but had not returned to work after his injury in May 2007. (R. 44). He testified that he filled out an

5

application in 2009 for a County of Cook deputy sheriff position, but was not called. Although he acknowledged he filled out an application for the position, he said, quite inconsistently, that he was not physically able to do the job. He has not applied for any other work. (R. 46-49).

The plaintiff testified that he currently carries a cane secondary to pain his foot (R. 50), but can walk eight blocks or a mile. (R. 50). He said the cane makes it easier. (R. 50). He uses the cane alternating in both hands. (R. 51). He testified that the cane was not prescribed, but that crutches had been prescribed in connection with his *initial treatment,* and he had used them until April 2008. (R. 42). He did not develop complications or swelling. He testified that he has not had physical therapy in relation to the foot injury. (R. 51). Also, the plaintiff stated that he had gone to a clinic prior to 2008, but stopped going in November 2008 due to lack of insurance. (R. 41). However, he admitted he had previously received treatment from the Fantus clinic of Stroger County Hospital where he was not charged for his treatment. He did not go back to the hospital for follow up. He testified that he was told that he had high blood pressure, but does not take medications for it. He just maintains a proper diet, and has not had any dizziness. (R. 52-54).

Finally, the plaintiff stated that he weighs 180 pounds at 67 inches tall. (R. 55). He has no driver's license because it was suspended a year ago. (R. 55). He has no DUI and has not gone to jail. (R. 56). When asked, he testified that he felt he could do jobs such as an information clerk and could work while seated. (R. 57-58). He said he watches television occasionally. (R. 58). He attends church, but has not gone since March 2009. (R. 58-59). He has friends. (R. 59). He testified that he lives on the ground level. (R. 59). He walks 2 blocks and back to a neighborhood store for light shopping. (R. 59). He goes out once a day to the store. (R. 59). He could lift a gallon of milk with his right hand. (R. 60). Also, the plaintiff stated that he has not taken prescribed medications in

6

2009, prior to the ALJ hearing. (R. 62). He now goes to the free clinic at 63rd & Woodlawn for basic care. (R. 62). There have been no emergency or acute medical services or issues in 2008. (R. 62-63).

## 2.
## The Vocational Expert's Testimony

Leanne L. Kehr testified as an impartial vocational expert ("VE"). She testified that Mr. Thorps's most recent job as health care provider was only performed for two months, so was not past relevant work. (R. 71). His previously worked as a shuttle driver was DOT classified as heavy. (R. 70). The job was low and semi-skilled in nature, and not transferrable. (R. 70). Mr. Thorps also worked as a dry cleaner, which the VE classified as medium, semi-skilled, SVP of five, and not transferable. (R. 70). The VE also classified Mr. Thorps's job as a ticket agent as light, unskilled, and performed at medium. (R. 70). His job as janitor was classified by the VE as "medium, unskilled.  He performed it at heavy." (R. 73).

## II.
## THE ALJ's DECISION

The ALJ found Mr. Thorps to have the following medically determinable impairments: hypertension and residuals of May 11, 2007, fractured head of 2nd left metatarsal. (R. 21). However, the ALJ determined that the plaintiff does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore, the plaintiff was found to not have a severe impairment or combination of impairments. (R. 21).

The ALJ reached his conclusion after recounting Mr. Thorps's testimony and reviewing the medical record. (R. 22-27). The ALJ found it clear from the medical evidence that the plaintiff was

not disabled through the date of his decision. (R. 24). He decided that the plaintiff had testified credibly regarding his activities, but was not fully credible regarding his impairments, viewed in light of his activities and lack of medical treatment or medication. (R. 23).

The ALJ's analysis of Mr. Thorps's credibility was careful and extended. His conclusion was that the plaintiff was unable to credibly confirm his allegations of severity under his burden of proof with any medical treatment after August 2007. (R. 23). The ALJ noted that the plaintiff was unable to produce any evidence of either treatment or ongoing pain medication after this date. (R. 23). Furthermore, the ALJ found that all x-rays and reports of treating sources through August 2007 consistently document only a fracture of the left 2nd metatarsal. (R. 24). Therefore, based on the medical evidence, the ALJ found that the plaintiff is not credible regarding his allegations of ongoing and disabling bilateral foot pain. (R. 25).

Though the plaintiff testified that he uses a cane, he admitted that one was never prescribed, as confirmed in the record. The ALJ observed that the plaintiff came to the hearing without a cane, but brought a cane to the consultative examination. (R. 25). Also, though the plaintiff testified that he used crutches until April 2008, the ALJ noted that the treatment note dated August 30, 2007, showed that the plaintiff presented with a cane, not crutches. (R. 25). Finally, though the plaintiff told the consultative examiner that he suffers from bilateral foot pain and could walk only 3-4 blocks, the ALJ noted that the plaintiff later testified that he could walk 8 blocks or a mile, and that medical records do not show any evidence of right foot pain prior to August 2009. (R. 25).

Furthermore, the ALJ found that the plaintiff's daily activities suggest that he is capable of a wide range of daily activities despite his allegations of disabling bilateral foot pain. (R. 25). The ALJ noted that the plaintiff took care of his mother and daily walked two blocks to the store. (R. 25).

8

The ALJ concluded, quite reasonably, that the plaintiff's lack of or use of medication and pursuit of treatment as inconsistent with his claims of disabling pain. (R. 25). The ALJ reasoned quite sensibly that one would certainly expect the plaintiff to take his pain medication if he had been experiencing such disabling pain. Though the plaintiff testified that he stopped seeking medical treatment in November 2008 due to lack of insurance, the ALJ found that the evidence demonstrated that the plaintiff was familiar with the County Hospital and free health systems, including the Stroger facility. (R. 25). The ALJ concluded that there was no reason why the plaintiff would not have continued to avail himself of free medical care if his condition had not improved. (R. 25).

The ALJ gave less than full weight to the capacity assessment of Dr. Gordon because he saw it to be based on the plaintiff's subjective complaints and inconsistent with Dr. Gordon's objective findings as well as the foregoing evidence, which bore significantly on plaintiff's credibility. (R. 26). The ALJ did give significant weight to the opinions of the State agency expert consultants, since they were consistent with the medical record that shows that the plaintiff had not treatment since August 2007, suggesting his condition had improved. Most significantly, the ALJ gave controlling weight to evidence that the plaintiff's treating doctor returned him to work in July 2007 without any restrictions. (R. 26-27).

Finally, though the plaintiff was diagnosed with a history of hypertension on June 19, 2007, the ALJ found that the plaintiff had not subsequently complained of symptoms related to high blood pressure. (R. 26). In sum, the ALJ found that the plaintiff had not met his burden of proof, and as such, did not have a severe impairment because he did not meet the 12-month durational requirement. (R. 27). The ALJ concluded that Mr. Thorps had not been under a disability and thus was not entitled to DIB. (R. 27). This decision is supported by substantial evidence.

### III.
### ANALYSIS

### A.
### The Standards of Review

We review the ALJ's decision directly, but we do so deferentially, *Weatherbee v. Astrue,* 649 F.3d 565, 568–69 (7th Cir.2011), and we play an "extremely limited" role. *Simila,* 573 F.3d 503, 513–514 (7th Cir.2009); *Elder v. Astrue,* 529 F.3d 408, 413 (7th Cir.2008). "We do not actually review whether [the plaintiff] is disabled, but whether the Secretary's finding of not disabled is supported by substantial evidence." *Lee v. Sullivan,* 988 F.2d 789, 792 (7th Cir.1993). *See also Weatherbee,* 649 F.3d at 568–69. If it is, the court must affirm the decision. 42 U.S.C. §§ 405(g). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Schaaf v. Astrue,* 602 F.3d 869, 874 (7th Cir.2010).

The court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Weatherbee,* 649 F.3d at 568–69; *Terry v. Astrue,* 580 F.3d 471, 475 (7th Cir.2009); *Berger,* 516 F.3d 539, 544 (7th Cir.2008). Where conflicting evidence would allow reasonable minds to differ as to whether the plaintiff is disabled, it is the ALJ's responsibility to resolve those conflicts. *Simila,* 573 F.3d at 513 –514; *Binion v. Chater,* 108 F.3d 780, 782 (7th Cir.1997). Since conclusions of law are not entitled to such deference, where the Commissioner commits an error of law, the court must reverse the decision regardless of the volume of evidence supporting the factual findings. *Schmidt v. Astrue,* 496 F.3d 833, 841 (7th Cir.2007).

While the standard of review is deferential, the court cannot "rubber stamp" the Commissioner's decision. *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir.2002). Although the ALJ

10

need not address every piece of evidence, the ALJ cannot limit discussion to only that evidence that supports his ultimate conclusion. *Herron v. Shalala,* 19 F.3d 329, 333 (7th Cir.1994). The ALJ's decision must allow the court to assess the validity of his findings and afford the plaintiff a meaningful judicial review. *Hopgood ex rel. L.G. v. Astrue,* 578 F.3d 696, 698 (7th Cir.2009). The Seventh Circuit calls this building a "logical bridge" between the evidence and the ALJ's conclusion. *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir.1996). It is a "lax" standard. *Berger,* 516 F.3d at 545. It is enough if the ALJ "'minimally articulate[s] his or her justification for rejecting or accepting specific evidence of a disability.'" *Berger,* 516 F.3d at 545; *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir.2001); *Mueller v. Astrue*, 2012 WL1802075, 1-2 (N.D.Ill. 2012).

**B.**
**Five–Step Sequential Analysis**

The Social Security Regulations provide a five-step sequential inquiry to determine whether a plaintiff is disabled:

1) is the plaintiff currently unemployed;

2) does the plaintiff have a severe impairment;

3) does the plaintiff have an impairment that meets or equals one of the impairments listed as disabling in the Commissioner's regulations;

4) is the plaintiff unable to perform his past relevant work; and

5) is the plaintiff unable to perform any other work in the national economy?

20 C.F.R. §§ 404.1520; *Simila,* 573 F.3d at 512–13; *Briscoe ex rel. Taylor v. Barnhart,* 425 F.3d 345, 351–52 (7th Cir.2005).

An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the

plaintiff is disabled. 20 C.F.R. § 416.920; *Briscoe,* 425 F.3d at 352. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the plaintiff is not disabled. 20 C.F.R. § 404.1520; *Stein,* 892 F.2d at 44. The plaintiff bears the burden of proof through step four; if it is met, the burden shifts at step five to the Commissioner, who must present evidence establishing that the plaintiff possesses the residual functional capacity to perform work that exists in a significant quantity in the national economy. *Weatherbee,* 649 F.3d at 569–70; *Briscoe,* 425 F.3d at 352.

## C.
## Analysis

Mr. Thorps advances two arguments for reversal or remand. First, he argues that the ALJ erred in finding that the plaintiff did not have a severe impairment, particularly in light of Dr. Gordon's functional assessments. Second, he argues that the ALJ failed to properly evaluate his credibility. Neither argument is persuasive.

## 1.

A severe impairment is an "impairment or combination of impairments which significantly limits [one's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 404.1521(a). Basic work activities are "the abilities and aptitudes necessary to do most jobs," including "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling." 20 C.F.R. § 404.1521(b). "An impairment or combination of impairments is found 'not severe' and a finding of 'not disabled' is made at [step two] when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered (*i.e.,* the person's impairment(s) has no more than

a minimal effect on his or her physical or mental ability(ies) to perform basic work activities)." *Bowen v. Yuckert,* 482 U.S. 137, 154 (1987) (quoting SSR 85–28).

The severe impairment requirement is a *de minimus* requirement designed to weed out frivolous claims. *Johnson v. Sullivan,* 922 F.2d 346, 347 (7th Cir.1990). A review of an administrative decision adverse to a plaintiff must give the required deference to the ALJ's conclusions where supported by substantial evidence. Here the ALJ reviewed and analyzed the medical evidence, and he carefully explained the reasoning that underlay his conclusions, including why he discounted the opinion of Dr. Gordon. There were no illogical or erroneous statements or conclusions by the ALJ like those that have occurred in some cases and which demonstrated the invalidity or absence of reasoning by the ALJ. *See, e.g., Sarchet*, 78 F.3d at 306. The record here is more than adequate to allow a reviewing court to assess the overall validity of the ALJ's findings, and the logical connection between the evidence and his conclusion that Mr. Thorps did not suffer a severe impairment is beyond reasonable debate.

Mr. Thorps's main contention is that by not giving sufficient weight to Dr. Gordon's evaluation, the ALJ erred in finding no severe impairment. The plaintiff makes this argument in two parts. First, he argues that the ALJ incorrectly found that there was no basis for Dr. Gordon's opinion on Mr. Thorps's limitations. Second, the plaintiff argues that before concluding that Dr. Gordon had no basis for his opinion, the ALJ should have made an effort to contact Dr. Gordon to determine the reasoning behind his assessments. *See* Plaintiff's Memorandum in Support of Motion for Summary Judgment, 5-9. ("Memorandum").

**a.**

Mr. Thorps argues that the ALJ "played doctor," making an independent medical

13

determination that the ALJ was not qualified to make. (Memorandum at 6). This is a position commonly advanced in social security cases. It is often no more than a shibboleth invoked to invalidate a decision with which the claimant disagrees. Of course, an ALJ may not substitute his own judgment for a physician's without relying on other medical evidence on record. *Murphy v. Astrue,* 496 F.3d 630, 634 (7th Cir.2007); *Clifford v. Apfel,* 227 F.3d 863, 870 (7th Cir.2000). An ALJ, however, is not only allowed to, he must, weigh the evidence, draw appropriate inferences from the evidence, and, where necessary, resolve conflicting medical evidence. *Young v. Barnhart,* 362 F.3d 995, 1001 (7th Cir.2004). That is precisely what the ALJ did.

He did not reflexively or casually dismiss Dr. Gordon's assessment or interpret it on his own. He merely considered and weighed it along with the other medical evidence. In his report, Dr. Gordon found, *inter alia*, that plaintiff had no redness, warmth, or swelling in his feet, had intact strength and sensation, had a slight limp but could walk more than 50 feet without a cane. (R. 279-280). Dr. Gordon then endorsed significant limitations without any explanation. (R. 286-289). The ALJ properly found that Dr. Gordon's findings of functional limitations were inconsistent with both Dr. Gordon's own physical examination notes taken during the same exam, as well as the only two other available assessments by doctors.

The ALJ also correctly noted that Dr. Gordon's notes, themselves, indicate that the limitations on function were based on the plaintiff's own complaints of pain, rather than objective findings. Yet, it is basic that a doctor's conclusions regarding a claimed symptom or subjective complaint from the patient are not medical evidence; they are the "the opposite of objective medical evidence." *Schaaf,* 602 F.3d at 875. Thus, where a doctor's "conclusions about [a patient's] limitations are based almost entirely on [the patient's] subjective complaints rather than objective

14

evidence," the ALJ may discount them. *Ketelboeter*, 550 F.3d at 625; *White,* 415 F.3d at 659; *Rice,* 384 F.3d at 371. And a patient's subjective complaints are not required to be accepted insofar as they clashed with other, objective medical evidence in the record. *Arnold v. Barnhart,* 473 F.3d 816, 823 (7th Cir.2007). Indeed, discrepancies between objective medical or other evidence and self-reports may be evidence of symptom exaggeration. *Sienkiewicz v. Barnhart,* 409 F.3d 798, 804 (7th Cir.2005); *Lopez v. Astrue,* 807 F.Supp.2d 750, 760 (N.D.Ill.2011)(collecting cases).

In his decision, the ALJ carefully explained that "the distances plaintiff reported at [Dr. Gordon's] examination and his testimony are at wide variance and I find his testimony relating to his walking to be enlightening and much more likely to reflect his abilities." Taking together Dr. Gordon's normal physical examination, the assessments of two other expert consultants, and Mr. Thorps's own testimony, the ALJ reasonably concluded that there was no objective medical evidence that residual effects of Mr. Thorps's left metatarsal fracture amounted to a severe impairment. That's not playing doctor, that's weighing the evidence.

The ALJ also correctly recognized that Mr. Thorps claim that he did not seek medical care after 2007 because he had "heard" that there might be costs associated with returning to the doctor was not credible because he knew he could get free treatment at Stroger Hospital where he had in fact gone for treatment before. "In assessing credibility, infrequent treatment or failure to follow a treatment plan can support an adverse credibility finding where the claimant does not have a good reason for the failure or infrequency of treatment." *Craft v. Astrue,* 539 F.3d 668, 679 (7th Cir.2008); *Simila,* 573 F.3d at 519 (the regulations expressly permit the ALJ to consider a claimant's treatment history). Where, as here, there is not a good cause for failure to seek treatment, the failure bears adversely on credibility. *Dixon,* 270 F.3d at 1178–79 (ALJ could have reasonably determined

that the claimant's testimony was not credible based in part on a finding that the claimant's visits to physicians were "intermittent at best"); *Schmidt,* 496 F.3d at 843 ("Schmidt has failed to establish that she suffers from her claimed level of chronic pain because she did not follow through on her physical therapy or pursue pain management.").

In *Lopez v. Astrue,* 807 F.Supp.2d 750, 760-761 (N.D.Ill.2011), the ALJ rejected the claim that plaintiff could not afford to get medical treatment because the evidence showed that the plaintiff knew about Stroger Hospital and other free medical services in Chicago and had availed herself of those medical services. The ALJ's negative credibility assessment of the plaintiff was thus fully justified. So too here.

The rules of evidence, in the main, are based on experience, logic, and common sense, *Donnelly v. United States*, 228 U.S. 243, 277–78 (1913)(Holmes, J., dissenting) – and common sense and human experience – which always have a role to play, *United States v. Montoya De Hernandez*, 473 U.S. 531, 542 (1985); *Greenstone v. Cambex Corp.*, 975 F.2d 22, 26 (1st Cir.1992) (Breyer, C.J.) – teach that an unexplained failure to seek medical help or to follow a prescribed medical regimen is inconsistent with a claim of significant pain or illness and thus should be weighed in the balance in determining a social security claimant's credibility. This is but a specific example of the general evidentiary principle governing impeachment that prior acts or omissions inconsistent with testimony is admissible for impeachment. *See Molnar v. Booth,* 229 F.3d 593, 604 (7th Cir.2000).

**b.**

The plaintiff next argues that the ALJ should have contacted Dr. Gordon to determine the basis for his opinion before discounting it as based on subjective complaints. (Memorandum at 7). The argument is without merit. A social security claimant bears the burden of supplying evidence to prove his claim of disability. *See Ribaudo v. Barnhart,* 458 F.3d 580, 583 (7th Cir.2006); *Scheck v. Barnhart,* 357 F.3d 697, 702 (7th Cir.2004). Although an ALJ has the duty to develop a full and fair record, he is "entitled to assume" that an applicant represented by an attorney is making his "strongest case for benefits." *Glenn v. Secretary of Health and Human Services,* 814 F.2d 387, 391 (7th Cir.1987). *See also Wall v. Astrue,* 561 F.3d 1048, 1063 (10th Cir.2009). "The ALJ's duty to develop the record is not so sweeping that it can relieve an applicant entirely of his own responsibility for supporting his claim; instead, the ALJ must exercise some discretion in deciding when and how he should order additional evidence." *Griffin v. Barnhart,* 198 Fed.Appx. 561, 564 (7th Cir.2006). Courts may only order the Commissioner to take additional evidence upon a showing that there is  new evidence that is material, and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding. *Wall,* 561 F.3d at 1063

In this case, there was no indication that there might be new material evidence that Dr. Gordon had not  provided or that "the information already in the record [was] 'inadequate' to make a determination of disability." *Skinner v. Astrue,* 478 F.3d 836, 843 (7th Cir.2007). The ALJ  found that the "evidence failed to support [the doctor's] conclusion, a finding the regulations entitled h[im] to make." *Simila,* 573 F.3d at 516–17. Moreover, the ALJ found that Dr. Gordon's opinion was contradicted by other medical evidence in the record, including his own clinical observations, and was dependent upon complaints that Mr. Thorps made to him at the evaluation, which were not evidence. *See* 14-16, *supra.*

17

There were only two ways to evaluate Dr. Gordon's inconsistent evaluation. Either he believed Mr. Thorps despite his own contrary, clinical findings or he was willing to "'bend over backwards to assist a patient in obtaining benefits.'" *Punzio v. Astrue,* 630 F.3d 704, 713 (7th Cir.2011). Either way, there was no need to make further inquiry of Dr. Gordon. It is for the ALJ to make credibility judgments based on the whole record, which Dr. Gordon did not have access to. And if he was simply trying to be accommodating despite his clinical assessment, his conclusion favorable to the plaintiff is of no value. In short, there was nothing further for the ALJ to do in connection with Dr. Gordon, and no principle of administrative law or common sense requires remand of a case unless there is reason to believe that the remand might lead to a different result. *People of the State of Ill. v. I.C.C.,* 722 F.2d 1341, 1348 (7th Cir.1983)(Posner, J.).

The plaintiff's argument, if accepted, would have significant and undesirable implications for future cases. *Cf.,* Posner, Cardozo: A Study in Reputation, 118 (1990) ("The soundness of a conclusion may not infrequently be tested by its consequences."). No longer would unsupported, conclusory assertions by a doctor, contradicted by other evidence in the case and based solely on the representations of a claimant be a basis for discounting the doctor's opinion. Henceforth, the substantial discretion an ALJ now has regarding the need to develop the record would be replaced by a rule requiring the ALJ to request further amplification on and explanation of the doctor's conclusory statements that were at odds with the other evidence in the case. Social security cases would become *needlessly* protracted.

The ALJ did not err in finding that Mr. Thorps did not have a severe impairment. Indeed, on the present record, he could not have responsibly concluded otherwise.

**2.**

18

Mr. Thorps argues that the ALJ's concession that "plaintiff's impairments could reasonably be expected to produce the alleged symptoms," is inconsistent with finding that Mr. Thorps was not credible with regard to his limitations." (Memorandum at 10). Mr. Thorps's singularly unpersuasive objections puts out of view the fact that credibility is not an all or nothing proposition. A witness may dissemble about one aspect of a case while telling the truth about others. The hoary doctrine of *falsus* in *uno, falsus* in *omnibus, The Santissima Trinidad,* 20 U.S. 283, 339 (1822), has given way to a more discerning approach that allows the fact-finder to accept portions of a witness' testimony and reject others. *Kadia v. Gonzales,* 501 F.3d 817, 821 (7th Cir.2007); *Allen v. CTA,* 317 F.3d 696, 703 (7th Cir.2003).

Further, the plaintiff's argument overlooks the basic principle  that "of course, the Administrative law judge did not have to believe" Mr. Thorps. *Sarchet,* 78 F.3d at 307. *Accord Johnson v. Barnhart,* 449 F.3d 804, 805 (7th Cir.2006). And that includes his claims of pain. *Molnar v. Astrue,* 395 Fed.Appx. 282, 288 (7th Cir. 2010). He was entitled – indeed he was obligated – to determine the validity of Mr. Thorps's testimony.  Social Security hearings are not exempt from the basic axiom of experience that parties and witnesses will exaggerate when it is to their advantage. *Schmude v. Tricam Industries, Inc.,* 556 F.3d 624, 628 (7th Cir.2009); *Johnson v. Barnhart,* 449 F.3d 804, 805 (7th Cir.2006); *Brown v. Chater,* 87 F.3d 963, 965–66 (8th Cir.1996). Thus, the administrative law judge was not bound to credit plaintiff's complaints insofar as they clashed with other, objective medical evidence in the record or his credibility was otherwise called into question by appropriate evidence, *Arnold v. Barnhart,* 473 F.3d 816, 823 (7th Cir.2007), including discrepancies between objective medical or other evidence and self-reports, which may be evidence of symptom exaggeration. *Sienkiewicz,,* 409 F.3d at 804.

19

But, making judgments about who is telling the truth can be a tricky business. A reviewing court lacks direct access to the witnesses, lacks the trier of fact's immersion in the case as a whole, and lacks the specialized tribunal's experience with the type of case under review. *See Carradine v. Barnhart,* 360 F.3d 751, 753 (7th Cir.2004). *Compare Ashcraft v. Tennessee,* 322 U.S. 143, 171 (1944) (Jackson, J., dissenting) ("a few minutes observation of the parties in the courtroom is more informing than reams of cold record."). That is why credibility determinations, especially when made by specialists such as the administrative law judges of the Social Security Administration, are entitled to "special deference." *Castile v. Astrue,* 617 F.3d 923, 929 (7th Cir.2010); *Briscoe ex rel. Taylor v. Barnhart,* 425 F.3d 345, 354 (7th Cir.2005); *Jones v. Astrue,* 623 F.3d 1155,1160 (7th Cir.2010); *Craft v. Astrue,* 539 F.3d 668, 678 (7th Cir.2008). Only when the ALJ's determination is patently wrong can it be reversed. *Jones,* 623 F.3d at 1162. This principle is equally applicable to credibility determination involving claimed pain.

*Molna*, 395 Fed.Appx. at 288; *Castile v. Astrue,* 617 F.3d 923, 929 (7th Cir.2010).

In making judgments about the veracity of a claimant's statements about his or her symptoms, including pain, the ALJ, in addition to considering the objective medical evidence, should consider the following in totality: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effect of any medication that the claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the claimant uses or has used to relieve pain or other symptoms; and (7) *any other factors* concerning the claimant's functional limitations and restrictions due to pain or

20

other symptoms. 20 C.F.R. § 404.1529(c)(3)(Emphasis supplied). Inconsistencies in the evidence and the extent to which there are any conflicts between the claimant's statements "*and the rest of the evidence* " are of course significant. 20 C.F.R. §§ 404.1529(c)(4)(Emphasis supplied). *Compare Kadia v. Gonzales,* 501 F.3d 817, 820 (7th Cir.2007) ("'factors other than demeanor and inflection go into the decision whether or not to believe a witness. Documents or objective evidence may contradict the witness' story; or the story itself may be so internally inconsistent or implausible on its face that a reasonable fact finder would not credit it.'").

An ALJ's credibility determination need not be flawless. *Simila,* 573 F.3d at 517. Only when it is "lack[ing] any explanation or support," will it be deemed "patently wrong. 623 F.3d at 1160-62; *Simila,* 573 F.3d at 517; *Elder,* 529 F.3d. at 413–14; *Allord v. Barnhart,* 455 F.3d 818, 821 (7th Cir.2006); *Berger,* 516 F.3d at 546. Demonstrating that a credibility determination is patently wrong is a "high burden." *Turner v. Astrue,* 390 Fed.Appx. 581, 587 (7th Cir.2010).

Failure to adhere to these fundamental principles of judicial review would effectively and impermissibly realign the different roles and responsibilities that Congress has allocated to the Social Security Administration and the judiciary.

## 3.

The ALJ pointed to several factors that allowed him to reasonably make the decision that Mr. Thorps was not credible regarding his alleged ongoing and disabling bilateral foot pain.  Most significantly, the medical record did not support Mr. Thorps's claims. Discrepancies between objective evidence and self-reports may suggest symptom exaggeration. *Getch v. Astrue,* 539 F.3d 473, 483 (7th Cir.2008); *Sienkiewicz.* 409 F.3d at 804 (7th Cir.2005); *Powers v. Apfel,* 207 F.3d 431, 435–36 (7th Cir.2000). The plaintiff was unable to produce records for any medical treatment after

August 2007. The admitted lack of any treatment following August 2007, which could not be credibly explained, significantly diminished the plaintiff's claim of ongoing disabling pain and bore on his credibility, and, as discussed earlier, the ALJ properly factored Mr. Thorps's failure to seek medical treatment after 2007 in assessing credibility. *See supra* at 15, *et. seq* .

Mr. Thorps's claim that he did not continue treatment because "he heard they had subsequently started charging for appointments" (R. 42-43) has a hollow ring. As the ALJ stressed, Mr. Thorps was familiar with the Stroger Hospital where he had received free treatment. Hence, his failure to have sought treatment for his pain reflects adversely on his credibility and his claim of chronic pain. *See Lopez, supra* at 16. The same rationale also confirms the permissibility of the ALJ's focus on Mr. Thorps's failure to take his prescribed pain medication. (R.27). The ALJ also pointed to Mr. Thorps's testimony regarding his daily activities which were inconsistent with his claims of pain and disability. (R. 27).

Not only was the ALJ's finding perfectly rational, any other conclusion could only have been arrived at by ignoring the overwhelming evidence in the case.

**CONCLUSION**

The plaintiff's motion for summary judgment or remand is DENIED, and the Commissioner's motion for summary judgment is granted.

DATE: July 9, 2012          ENTERED: _____

                            UNITED STATES MAGISTRATE JUDGE